UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIVIL ACTION NO.
-----------------------------------------------------------------------x
DAVID HARGRAVES,

                                        Plaintiff,

                -against-                                    COMPLAINT
                                                            JURY TRIAL COMPLAINT
M&T BANK and RICHARD REUSTLE, a/k/a
RICK REUSTLE,

                                        Defendants.
-----------------------------------------------------------------------x

## PRELIMINARY STATEMENT

1. This is an employment discrimination action, in which plaintiff DAVID

    HARGRAVES (hereinafter "Hargraves" or "Plaintiff") seeks relief for defendants'

    violations of his rights secured by Title VII of the Civil Rights Acts of 1964.

    Hargraves also asserts pendent causes of action under the laws of the State and

    City of New York.  Hargraves seeks a jury trial, from which both compensatory

    and punitive damages are sought, in addition to an award of costs and attorneys'

    fees, and such other and further relief as this Court deems just and equitable.

## JURISDICTION

2. Jurisdiction is conferred upon this Court by 28 U.S.C. Sections 1331 and 1343 (3)

    and (4), along with Title VII of the Civil Rights Act of 1964, as this is an action

    seeking redress for violations of plaintiff's civil rights.  The amount of damages in

    controversy is in excess of $150,000.00, exclusive of interest and costs.

3. Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, known

    as Supplemental Pendant Party Jurisdiction, the State and City of New York law

1

claims against any pendant party having a common nucleus of operative facts with the federally based causes of action asserted herein and arising out of the same transaction and occurrence giving rise to the federally based claims and causes of action asserted herein.

4. Hargraves requests that the Court exercise its appropriate discretion and powers to consider all pendant party and pendent state law claims. The claims derive from the same transactions and occurrences involving all the parties hereto, giving rise to the federally and State of New York-based claims and causes of action, and have a common nucleus of operative facts with both the federally and State of New York-based claims and causes of action.

## VENUE

5. Venue is proper in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. Section 1391 (a), (b) and (c).

## PARTIES

6. Hargraves is a legal resident of the United States, currently residing at 166 Hardwick Street, Clayton, North Carolina 27527, and Hargraves is currently 58 years of age (date of birth x/xx/63).

7. Hargraves is an African-American black male.

8. Upon information and belief, defendant M&T BANK (hereinafter "M&T") was and still is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York, M&T maintains a principal place of business and transacts business within the County of New York, and as such, M&T is subject to the jurisdiction of this Honorable Court.

9. That at all times hereinafter alleged, M&T was and still is a foreign corporation, duly registered and authorized to transact business within the State of New York, M&T maintained and maintains a principal place of business, transacted and transacts business, within the County of New York, and as such, M&T is subject to the jurisdiction of this Honorable Court.

10. That at all times hereinafter alleged, M&T was and still is an unincorporated association, M&T maintains a principal place of business and transacts business within the County of New York, in the State of New York, and as such, M&T is subject to the jurisdiction of this Honorable Court.

11. That at all times hereinafter alleged, defendant RICHARD REUSTLE, a/k/a RICK REUSTLE (hereinafter "Reustle"- M&T and Reustle are collectively referred to as the "Defendants") was and is a resident of the County of Suffolk, in the State of New York, and as such, Reustle is subject to the jurisdiction of this Honorable Court.

12. That at all times hereinafter alleged, the majority of the actions, conduct and behavior of the Defendants, its and their agents, servants and employees, which form the gravamen of the causes of action set forth herein, occurred within the County of New York, in the State of New York, and as such, the Defendants are subject to the jurisdiction of this Honorable Court.

13. That at all times hereinafter alleged, Hargraves was a resident of the County of Nassau, in the State of New York, as of the dates within which the actions, conduct and behavior of the Defendants, its and their agents, servants and

employees, which form the gravamen of the causes of action set forth herein, occurred.

14. That at all times hereinafter alleged, M&T was and is a financial institution, in the business of providing personal and commercial banking services to its customers and clients within the United States, including within City and State of New York (hereinafter the "Banking Services").

15. That at all times hereinafter alleged, M&T provided Banking Services from branches located throughout the United States, including within the City and State of New York.

16. That at all times hereinafter alleged, M&T grouped and assigned various branches into regions, of which M&T hired, promoted, appointed and assigned employees to senior level positions, who supervised, directed and controlled the business operations of each region (hereinafter the "Regional Sales Manager").

17. That at all times hereinafter alleged, one (1) of the branches created, operated, managed and controlled by M&T, for its providing of Banking Services, was located in Harlem, New York (hereinafter the "Harlem Branch").

18. That at all times hereinafter alleged, M&T assigned employees to work at the Harlem Branch, for the providing of Banking Services.

19. That at all times hereinafter alleged, Hargraves was an agent, servant and/or employee of M&T.

20. That at all times hereinafter alleged, Hargraves was the branch manager (hereinafter the "Branch Manager") of the Harlem Branch, his duties and responsibilities included the management and supervision of the operation of, the

business production of, and of M&T agents, servants and employees assigned to, the Harlem Branch.

21. That at all times hereinafter alleged, Reustle was and is an agent, servant and/or employee of M&T.

22. That at all times hereinafter alleged, Reustle was Hargraves' supervisor, and as such, Reustle directed and controlled the terms and conditions of Hargrave's employment at M&T.

23. That any and all of the actions, conduct, behavior and occurrences of the agents, servants and employees of M&T, as is alleged herein, were conducted, actuated and performed, with the knowledge, consent, authority and ratification of M&T, and within the scope of their duties and responsibilities as an agent, servant and/or employee, of M&T.

24. That any and all of the actions, conduct, behavior and occurrences of Reustle, as is alleged herein, were conducted, actuated and performed with the knowledge, consent, authority and ratification of M&T, and within the scope of his duties and responsibilities as an agent, servant and/or employee, of M&T.

25. That at all times hereinafter alleged, M&T employed fifteen (15) or more employees, and as such constituted and constitutes an "employer" within the meaning of the Federal anti-discrimination laws pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., and interpreting case precedent (hereinafter "Title VII").

26. That at all times hereinafter alleged, Hargraves was an "employee", as that term is defined by Title VII.

27. That at all times hereinafter alleged, M&T employed four (4) or more employees, and as such constituted and constitutes an "employer" within the meaning of § 296, et seq., of the Executive Law of the State of New York and interpreting case precedent (hereinafter "Executive Law").

28. That at all times hereinafter alleged, Hargraves was an "employee", as that term is defined by the Executive Law.

29. That at all times hereinafter alleged, Reustle was a "supervisor", as that term is defined by the Executive Law.

30. That at all times hereinafter alleged, Reustle was an "aider and abettor", as that term is defined by the Executive Law.

31. That at all times alleged, Reustle was and is an individual subject to liability to Hargraves herein, per the Executive Law.

32. That at all times hereinafter alleged, M&T employed four (4) or more employees, and as such constituted and constitutes an is an "employer", as that term is defined the relevant provisions of the Administrative Code of the City of New York, §8-107, et seq. (hereinafter "Administrative Code").

33. That at all times hereinafter alleged, Hargraves was an "employee", as that term is defined by the Administrative Code.

34. That at all times hereinafter alleged, Reustle was a "supervisor", as that term is defined by the Administrative Code.

35. That at all times hereinafter alleged, Reustle was an "aider and abettor", as that term is defined by the Administrative Code.

36. That at all times alleged, Reustle was and is an individual subject to liability to Hargraves herein, per the Administrative Code.

**STATEMENT OF FACTS APPLICABLE TO ALL CAUSES OF ACTION**

37. That Hargraves was employed full-time by M&T as the Branch Manager of its Harlem Branch, from on or about August of 2013-August 1, 2020.

38. From inception of Hargraves' employment at M&T, until on or about December of 2018, Reustle was the Regional Sales Manager of the M&T region, which included the Harlem Branch (hereinafter "Reustle's Region").

39. That throughout his tenure of employment with M&T, Hargraves' work quality, quantity and performance, was satisfactory or better, if not exemplary.

40. That throughout his tenure of employment with M&T, Hargraves' work performance was regularly and consistently recognized, acknowledged and rewarded by M&T, its agents, servants and employees.  Examples include, but are not limited to, the following:

> a. The Harlem Branch was not only historically one (1) of the lowest performing branches, but its prior branch manager was allegedly involved in multiple inappropriate relationships with its branch employees.  Within three (3) months after Hargraves' commencement of employment with M&T as the Branch Manager of the Harlem Branch, however, Hargraves began to achieve, and thereafter continued to achieve, stellar, if not unparalleled, branch production success;

     b.   Hargraves was ranked in the top 5% of all M&T employees, based on M&T's internal "people surveys";

     c.   Hargraves made M&T's President Counsel, and twice made M&T's Chairman's Club (honors awarded by M&T to only its top-producing employees);

     d.   Hargraves was repeatedly asked to fill-in for other Regional Sales Managers when they were absent or on vacation;

     e.   Hargraves was repeatedly requested to not only assist other M&T branch managers in the analysis and interpretation of banking data, but to provide sales training for other M&T employees;

     f.   Hargraves not only received positive annual performance evaluation reviews, but received annual raises (in 2013, Hargraves' annual salary was $90,000.00, which by August 1, 2020 had increased to $120,000.00) and merit bonuses (not only averaging approximately $10,000.00 per year, but in addition thereto, Hargraves was awarded stock options).

41. Beginning from on or about the inception of employment, through to his discharge therefrom on or about August 1, 2020, Hargraves was subjected to a replete and pervasive continuous pattern of unsolicited, adverse, hostile, intentional and unwanted job treatment and unlawful racial, color, ethnicity and/or national origin discrimination based on Hargraves' status as a black African-American, by the Defendants, its and his agents, servants and employees, to which Hargraves'

similarly-situated but white/non-black peers and co-workers were not subjected to, and which continued unabatedly despite Hargraves' repeated protestations and complaints to the defendants for it to forever cease and desist.

42. During the interview process for employment with M&T, including with Reustle, Hargraves not only recounted his banking experience, but Hargraves expressly represented that he wanted to ascend within M&T to become a Regional Sales Manager, to which Reustle, assured that such employment opportunities would be available.

43. Notwithstanding the foregoing, the Defendants had a policy, and/or engaged in an intentional, willful and unlawfully discriminatory pattern and practice, in not hiring or promoting persons of color, and/or African-Americans, to the position of Regional Sales Manager.

44. During Hargraves' tenure with M&T, other than one (1) African-American male who entered the employ of M&T as a result of a merger, none of the approximate 15 M&T Regional Sales Managers hired and/or promoted by M&T in the Tri-State Area during Hargraves' tenure of employment with M&T, were either African-Americans, and/or otherwise of color, despite such individuals, who were qualified, including Hargraves, repeatedly applying for such positions.

45. Furthermore, the Defendants had a policy, and/or engaged in an intentional, willful and unlawfully discriminatory pattern and practice, of placing people of color, and/or black African-Americans, as the "faces" of branches within Reustle's Region, which the Defendants deemed/perceived to be in a minority-

based neighborhood. Examples of such unlawful discriminatory actions, conduct and behavior include, but are not limited to, the following:

    a. Upon being hired, Hargraves was assigned to be the Branch Manager of the Harlem Branch;

    b. Defendants designating Hargraves as M&T's minority "face" of the Harlem Branch, a branch deemed/perceived by M&T to be located within a minority neighborhood, said designation characterized by having Hargraves starring in M&T's social media public relations campaign/commercials, including placement of Hargraves in a commercial with the owner of Sylvia's Restaurant, an African-American owned southern food restaurant located in Harlem, and instructing Hargraves to focus his efforts during a commercial filmed in or about April-May of 2020 on inducing black-owned businesses within the Harlem Branch neighborhood to apply for PPP loans;

    c. Between approximately April 2016-spring of 2020, consistent with Hargraves' intent expressed during the interview process, Hargraves repeatedly sought a promotion to a M&T Regional Sales Manager position within the Tri-State area (including the submission of approximately formally four (4) applications for open M&T Regional Sales Manager positions [one (1) in Pennsylvania, two (2) in upstate New York, and one (1) in Nassau County], as well as approaching both Reustle and Reustle's

supervisor, Noel Carroll (hereinafter "Carroll"), to continuously express interest in a promotion to a Regional Manager position);

d. The Defendants, however, rejected all such formal applications for a Regional Sales Manager position, instead hiring/promoting no persons of color and/or African-Americans to said positions (despite receiving applications from qualified non-white applicants);

e. Reustle's alleged business justification for denying these promotions to Hargraves included:  that Hargraves needed to "…learn the culture of the organization"; that Hargraves was "not ready" for such a promotion; that the position sought in Nassau County was better suited for a "college graduate"; and that Reustle wanted Hargraves to remain at the Harlem Branch, and to "just produce";

f. Reustle specifically dissuaded Hargraves from submitting any further formal applications for any future open Regional Manager positions (including for open positions in M&T's Hudson Valley South regions), indicating instead that M&T was aware of his intent for such a promotion, and that Hargraves would be sought out if M&T deemed Hargraves suitable for any future open Regional Sales Manager position;

g. By and around the end of 2019, Carroll warned Hargraves against seeking such a promotion, admitting that "…sometimes its just not

for you", and that "…you may need to go another company to get what you want";

h.   The Defendants not only prevented Hargraves from transferring to a lateral Branch Manager position within Reustle's Region, to branches which deemed/perceived by the Defendants not to be in a predominantly minority based-neighborhood (instead, only offering Hargraves transfers to Branch Manager positions in branches within Reustle's Region which were deemed/perceived to be in a predominantly minority-based neighborhood, to which the Defendants assigned persons of color to those positions upon Hargraves' rejection thereof), but the Defendants replaced black Branch Managers of branches within Reustle's Region in neighborhoods which the Defendants deemed/perceived to be gentrifying.  Examples include, but are not limited to, the following:

        I.     In or about 2017, Hargraves requested a transfer to the open Branch Manager position at M&T's Melville Branch, deemed/perceived by the Defendants to be a predominately non-minority white .neighborhood, from which Reustle not only refused, claiming "…it was not the right fit", but instead the Defendants gave that Branch Manager position to Antonio Pergraglio, a white man;

II.     In or about 2018-2019, the Defendants offered
        Hargraves to transfer to the open Branch Manager
        position of the East New York (Brooklyn) branch
        within Reustle's Region, a branch within a
        neighborhood deemed/perceived by the Defendants
        to be predominately minority-based, to replace John
        Whitkitt, an African-American male who was
        retiring.  Upon Hargraves' rejection of this offer, the
        Defendants gave this position to Erroll McGlassen
        (hereinafter "McGlassen", an African-American
        male).

III.    In or about 2018-2019, Defendants transferred
        McGlassen from his position as the Branch
        Manager of M&T's Park Slope branch (a branch
        within Reustle's Region, located in a neighborhood
        deemed/perceived by the Defendants to be
        gentrifying), to be the Branch Manager of M&T's
        East New York branch.  The Branch Manager
        position at M&T's Park Slope branch was then
        given to a non-black employee;

IV.     In or about 2018, Norman Jackson (hereinafter
        "Jackson"), an African-American male, was
        removed from his position as Branch Manager of

M&T's branch located in Sutton Place, New York (with Reustle's Region), a location deemed/perceived by the Defendants to be in a predominately non-minority white neighborhood, after that branch it was renovated.  Defendants replaced Jackson with Jason Farrell, a white man, and transferred Jackson to be the Branch Manager of M&T's branch located Grammercy, New York (a branch within Ruestle's Region located in a neighborhood deemed/perceived by the Defendants to be more racially-mixed and diverse).

46. Hargraves repeatedly complained not only to the Defendants, its and his agents, servants and employees, but to M&T's Human Resources Department about Reustle, beginning from on or about September of 2017, including for claims of unlawful race, color, ethnicity and/or national origin discrimination, questioning not only being denied promotions to the position of Regional Sales Manager, but why other persons of color were not being offered Regional Sales Manager positions, seeking a reasonable investigation and remediation thereof.

47. Rather than undertaking a reasonable investigation and remediation thereof, M&T, its agents, servants and employees, continued to engage unabashedly in such unlawful discriminatory conduct (including: promoting Reustle, in or about December of 2018, to the position of Metro Market Manager for Retail Banking, who thereafter continued to exercise supervision and control over the terms and

conditions of Hargraves' employment at M&T; hiring a white male (Patrick Keegan) instead of Hargraves as Resutle's replacement to the position of Regional Sales Manager; Hargraves thereafter repeatedly being warned when attempting to question and complain about being the subject of unlawful racial/ethnic/national origin discrimination, including by his peers and by Gary Dudish (M&T's Pennsylvania region Market Manager for Retail Banking), that "M&T does not promote black people under Reustle", and that Reustle wanted Hargraves to remain solely as the Branch Manager of the Harlem Branch, and to just focus on "business development" threat).

48. Rather than undertaking a reasonable investigation and remediation thereof, the Defendants, its and his agents, servants and employees, engaged an affirmative pervasive and continuous pattern of hostile and adverse treatment of Hargraves, to retaliate against Hargraves for complaining and reporting of the aforesaid discriminatory actions, conduct and behavior.   Examples include, but are not limited to, the following:

      i.  Defendants continued rejection of Hargraves' applications for, and intentional dissuading of Hargraves from applying for, Regional Manager positions;

     ii.  M&T held a specialized employee training seminar in Buffalo, New York, in which high-producing employees were chosen to attend, during which these employees would be videotaped while presenting mock-sales, and then have their performances critiqued. Hargraves repeatedly sought to attend, as Hargraves was advised

that it would be considered a plus with his application for a
Regional Sales Manager position.  While M&T finally permitted
Hargraves to attend, Hargraves was passed over, not being
provided with an opportunity to be either videotaped or critiqued.
Rather, Hargraves was advised that a white woman had allegedly
made a complaint thereat of having a verbal altercation with him
(which Hargraves not only denied, but from which M&T did not
conduct an investigation);

iii. Through July of 2020, Hargraves was made the subject of multiple
M&T Human Resources Department investigations, in which
Hargraves was wrongfully accused of:  a physical altercation with
an employee (Paul Krebaum); retaliating against an M&T Harlem
Branch employee for submission of work-related complaints; a
verbal altercation with an employee who was fired for
performance-based issues (Shayra Johnson); and, for violating an
unspecified "bank policy";

iv. Hargraves being terminated effective August 1, 2020, for allegedly
forcing Harlem Branch M&T employees to work additional hours
for which they were not compensated, from which Hargraves not
only denied, but which Hargraves prior thereto regularly
coordinated the Harlem Branch employees' scheduling issues
during the pandemic with both Keegan and M&T Human
Resources Department (Shami Lewis);

v. Defendants replaced Hargraves with Eric Williams, an African-American male, as the new Branch Manager of the Harlem Branch.

49. That Hargraves has been unemployed since termination from employment with M&T.

50. That heretofore Hargraves timely filed charges of unlawful employment discrimination and retaliation, based on the aforesaid, in violation of Title VII, against M&T, with the Equal Employment Opportunity Commission (hereinafter the "EEOC").

51. On July 28, 2021, the EEOC issued to Hargraves, a Notice of Right to Sue.

52. Hargraves has complied with any and all conditions precedent to the institution of the subject action.

53. As a proximate result thereof, Hargraves was caused to suffer serious and severe and potentially permanent personal, emotional, psychological and physical injuries, stress, humiliation, mental pain and suffering, embarrassment, humiliation, and injury to his dignity, as well suffered and continues to suffer, loss of earnings and economic damages.

## FEDERAL STATUTORY CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Violations of Title VII of the Civil Rights Act of 1964 against M&T BANK-Racial/Ethnic/National Origin Discrimination)

54. Plaintiff incorporates by reference the allegations set forth in paragraphs "1" through "53" of the Complaint, as if fully set forth at length herein.

55. It is a violation of Title VII for employers such as M&T to discriminate in the

terms and conditions of employment, because an employee is a member of a statutorily protected class of individuals.

56. Race, color, ethnicity and national origin are defined by Title VII as statutorily protected classes.

57. Employees that have the terms and conditions of their employment changed, and/or adversely affected, as well as being terminated from employment, because of their race, color, ethnicity and/or national origin, are defined by Title VII and by case precedent as protected classes.

58. Hargraves was and is a member of the aforesaid protected classes.

59. The aforesaid conduct, actions and behavior of M&T, its agents, servants or employees, were based upon Hargraves' membership in the aforesaid protected classes, in violation of Title VII.

60. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for discrimination.

61. In addition to suffering significant loss of wages, bonuses, income, out of pocket expenses, perks and benefits, Hargraves was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of M&T's outrageous and reprehensible conduct in violating Hargraves' human rights.

62. As a proximate result of the M&T's conduct, Hargraves has been adversely affected in her employment opportunities, his normal life's pursuits, and he believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of his life, and will prevent him from

functioning as he did prior to the occurrences complained of herein.

63. That the aforesaid actions, conduct and behavior of M&T, its agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

64. Hargraves, therefore, seeks monetary damages for this cause of action, in the amount of ten million ($10,000,000.00) dollars, in addition to an award of punitive damages, attorney's fees, interest, court costs and disbursements.

### SECOND CAUSE OF ACTION

**(Violations of Title VII of the Civil Rights Act of 1964 on behalf of Plaintiff against M&T BANK- Retaliation)**

65. Plaintiff incorporates by reference the allegations set forth in paragraphs "1" through "64" of the Complaint, as if fully set forth at length herein.

66. That under Title VII, an employee complaining of discrimination is a protected activity.

67. That under Title VII, an employer cannot retaliate against an employee by changing the terms and conditions of their employment for complaints of racial, color, ethnicity and/or national origin discrimination.

68. That it is a violation of Title VII for an employer such as M&T to retaliate against an employee by changing and/or adversely affecting the terms and conditions of their employment for complaints of racial, color, ethnicity and/or national origin discrimination.

69. The aforesaid conduct, actions and behavior of M&T, its agents, servants or

employees, were based upon Hargraves' complaints as a member in the aforesaid protected classes, in violation of Title VII.

70. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for retaliation.

71. In addition to suffering significant loss of wages, bonuses, income, out of pocket expenses, perks and benefits, Hargraves was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of M&T's outrageous and reprehensible conduct in violating Hargraves's human rights.

72. As a proximate result of the M&T's conduct, Hargraves has been adversely affected in his employment opportunities, his normal life's pursuits, and he believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of his life, and will prevent him from functioning as he did prior to the occurrences complained of herein.

73. That the aforesaid actions, conduct and behavior of M&T, its agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

74. Hargraves, therefore, seeks monetary damages for this cause of action, in the amount of ten million ($10,000,000.00) dollars in addition to an award of punitive damages, attorney's fees, interest, court costs and disbursements.

## PENDENT STATE CAUSES OF ACTION ON BEHALF OF PLAINTIFF AGAINST THE DEFENDANTS

## THIRD CAUSE OF ACTION

**(Violations of § 296, et seq., of the Executive Law of the State of New York on behalf of Plaintiff against all Defendants- Racial, Ethnicity and National Origin Discrimination)**

75. Plaintiff incorporates by reference the allegations set forth in Paragraphs "1" through "74" of the Complaint, as if fully set forth at length herein.

76. It is a violation of § 296, et seq., of the Executive Law of the State of New York (hereinafter "Executive Law") for employers such as M&T to discriminate in the terms and conditions of employment because an employee such as Hargraves is a member of a statutorily protected class of individuals.

77. It is a violation of the Executive Law for a supervisor such as Reustle to discriminate in the terms and conditions of employment because an employee such as Hargraves is a member of a statutorily protected class of individuals.

78. It is a violation of the Executive Law for an aider and abettor such as Reustle to discriminate in the terms and conditions of employment because an employee such as Hargraves is a member of a statutorily protected class of individuals.

79. Employees that have the terms and conditions of their employment changed and/or adversely affected, as well as being terminated from employment, because of their race, color, ethnicity and/or national origin, are defined by the Executive Law and by case precedent as a protected class.

80. Hargraves was and is a member of the aforesaid protected class.

81. The aforesaid conduct, actions and behavior of the Defendants, its and their

agents, servants or employees, were based upon Hargraves' membership in the aforesaid protected classes, in violation of the aforesaid New York State anti-discrimination statutes.

82. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions, were and are a pretext for discrimination.

83. In addition to suffering significant loss of wages, income, bonuses, out of pocket expenses, perks and benefits, Hargraves was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of Defendants' outrageous and reprehensible conduct in violating Hargraves' human rights.

84. As a proximate result of the Defendants' conduct, Hargraves has been adversely affected in his employment opportunities, his normal life's pursuits, and he believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of his life, and will prevent him from functioning as he did prior to the occurrences complained of herein.

85. That the aforesaid actions, conduct and behavior of the Defendants, its and his agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

86. Hargraves, therefore, seeks monetary damages for this cause of action, in the amount of ten million ($10,000,000.00) dollars in addition to an award of punitive damages, attorney's fees, interest, court costs and disbursements.

## FOURTH CAUSE OF ACTION

### (Violations of § 296, et seq., of the Executive Law of the State of New York on behalf of Plaintiff against all Defendants- Retaliation)

87. Plaintiff incorporates by reference the allegations set forth in Paragraphs "1" through "86" of the Complaint, as if fully set forth at length herein.

88. It is a violation of the Executive Law for employers such as M&T to retaliate against an employee such as Hargraves for complaints of discrimination in the workplace.

89. It is a violation of the Executive Law for a supervisor such as Reustle to retaliate against an employee such as Hargraves for complaints of discrimination in the workplace.

90. It is a violation of the Executive Law for an aider and abettor such as Reustle to retaliate against an employee such as Hargraves for complaints of race, color, ethnicity and/or national origin discrimination in the workplace.

91. The aforesaid conduct, actions and behavior of the Defendants, its and their agents, servants or employees, were based upon Hargraves' complaints of discrimination, in violation of the aforesaid Executive Law.

92. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for retaliation.

93. In addition to suffering significant loss of wages, income, bonuses, out of pocket expenses, perks and benefits, Hargraves was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of Defendants'

outrageous and reprehensible conduct in violating Hargraves' human rights.

94. As a proximate result of the Defendants' conduct, Hargraves has been adversely affected in his employment opportunities, his normal life's pursuits, and he believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of his life, and will prevent him from functioning as he did prior to the occurrences complained of herein.

95. That the aforesaid actions, conduct and behavior of the Defendants, its and his agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

96. Hargraves, therefore, seeks monetary damages for this cause of action, in the amount of ten million ($10,000,000.00) dollars in addition to an award of punitive damages, attorney's fees, interest, court costs and disbursements.

### PENDENT CITY OF NEW YORK CAUSES OF ACTION ON BEHALF OF PLAINTIFF AGAINST THE DEFENDANTS

### FIFTH CAUSE OF ACTION

**(Violations of Title 8 of the Administrative Code for the City of New York on behalf of Plaintiff against all Defendants- Racial, Ethnicity and National Origin Discrimination)**

97. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"96" of this Complaint, as if fully set forth at length herein.

98. It is a violation of the Title 8 of the Administrative Code for the City of New York (hereinafter "Administrative Code") for employers such as M&T to discriminate in the terms and conditions of employment, because an employee such as

Hargraves is a member of a statutorily protected class of individuals.

99. It is a violation of the Administrative Code for a supervisor such as Reustle to discriminate in the terms and conditions of employment, because an employee such as Hargraves is a member of a statutorily protected class of individuals.

100. It is a violation of the Administrative Code for an aider and abettor such as Reustle to discriminate in the terms and conditions of employment, because an employee such as Hargraves is a member of a statutorily protected class of individuals.

101. Employees that have the terms and conditions of their employment changed and/or adversely affected, as well as being terminated from employment, because of their race, color, ethnicity and/or be national origin, are defined by the Administrative Code and by case precedent as protected classes.

102. Hargraves was and is a member of the aforesaid protected classes.

103. The aforesaid conduct, actions and behavior of the Defendants, its and their agents, servants or employees, were based upon Hargraves' membership in the aforesaid protected classes, in violation of the aforesaid Administrative Code.

104. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for discrimination.

105. In addition to suffering significant loss of wages, income, bonuses, out of pocket expenses, perks and benefits, Hargraves was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of Defendants' outrageous and reprehensible conduct in violating Hargraves' human

rights.

106.     As a proximate result of the Defendants' conduct, Hargraves has been adversely affected in his employment opportunities, his normal life's pursuits, and he believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of his life, and will prevent him from functioning as he did prior to the occurrences complained of herein.

107.     That the aforesaid actions, conduct and behavior of the Defendants' conduct, its and his agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

108.     Hargraves, therefore, seeks monetary damages for this cause of action, in an amount of ten million ($10,000,000.00) dollars in addition to an award of punitive damages, interests, attorney's fees, court costs and disbursements.

## SIXTH CAUSE OF ACTION

### (Violations of Title 8 of the Administrative Code for the City of New York on behalf of Plaintiff against all Defendants- Retaliation)

109.     Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"108" of this Complaint, as if fully set forth at length herein.

110.     It is a violation of the Administrative Code for employers such as M&T to retaliate in the terms and conditions of employment, because an employee such as Hargraves makes complaints regarding race, color, ethnicity and/or national origin.

111.     It is a violation of the Administrative Code for a supervisor such as Reustle to retaliate in the terms and conditions of employment, because an employee such as Hargraves makes complaints regarding race, color, ethnicity and/or national origin discrimination.

112.     It is a violation of the Administrative Code for an aider and abettor such as Reustle to retaliate in the terms and conditions of employment, because an employee such as Hargraves makes complaints regarding race, color, ethnicity and/or national origin discrimination.

113.     Employees that have the terms and conditions of their employment changed and/or adversely affected, as well as being terminated from employment, because of their race, color, ethnicity and/or national origin, are defined by the Administrative Code and by case precedent as a protected class.

114.     Hargraves was and is a member of the aforesaid protected classes.

115.     The aforesaid conduct, actions and behavior of the Defendants, its and their agents, servants or employees, were based upon Hargraves' membership in the aforesaid protected classes, in violation of the aforesaid Administrative Code.

116.     That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for retaliation.

117.     In addition to suffering significant loss of wages, income, bonuses, out of pocket expenses, perks and benefits, Hargraves was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of Defendants' outrageous and reprehensible conduct in violating Hargraves' human

rights.

118.    As a proximate result of Defendants' conduct, Hargraves has been adversely affected in his employment opportunities, his normal life's pursuits, and he believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of her life, and will prevent him from functioning as he did prior to the occurrences complained of herein.

119.    That the aforesaid actions, conduct and behavior of the Defendants, its and his agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

120.    Hargraves, therefore, seeks monetary damages for this cause of action, in an amount of ten million ($10,000,000.00) dollars in addition to an award of punitive damages, interests, attorneys' fees, court costs and disbursements.

WHEREFORE, plaintiff DAVID HARGRAVES demands judgment against the defendants M&T BANK and RICHARD REUSTLE, a/k/a RICK REUSTLE, jointly and severally, in accordance with the relief demanded in each cause of action, along with such other, further and different relief as to this Honorable Court may seem appropriate and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff, by and through his attorneys, ALAN J. BENNETT, PLLC, hereby demand a trial by jury on all issues so triable in this matter.

Dated:  New York, New York
            October 6, 2021

ALAN J. BENNETT, PLLC

By:

ALAN J. BENNETT, ESQ. (AJB-1635)
Attorneys for Plaintiff
DAVID HARGRAVES
369 Lexington Avenue
Suite 369
New York, New York 10017
(212) 696-2116